IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 13, 2018 Session

## AMY BRASFIELD MARLOW v. JOSEPH CHARLES MARLOW

**Appeal from the Circuit Court for Knox County**
**No. 125184      Gregory S. McMillan, Judge**

_____

### No. E2017-01190-COA-R9-CV

_____

This appeal arises from three post-divorce petitions for criminal contempt against Father in which Mother asserts over 200 separate counts. The principal issues on appeal pertain to the Double Jeopardy Clause of the United States and Tennessee Constitutions. Following a three day trial on the first petition, Father was found to be in criminal contempt of 60 counts. After Mother filed her second petition in which she alleged 133 additional counts of contempt, the parties appeared in court to announce a settlement pursuant to which Father would plead guilty to 10 unspecified counts with the remaining counts to be dismissed. Without advising and questioning Father before accepting a plea as Tenn. R. Crim. P. 11(b) requires, the trial court approved the agreed order, finding Father in criminal contempt of 10 unspecified counts. After Mother filed her third petition for criminal contempt, Father filed a "Motion to Alter or Amend and/or Rule 60.02 Motion to Set Aside Most of the Criminal Contempt Findings and Holdings in this Cause," contending all but two of the 60 initial convictions were constitutionally flawed. As for the first 58 convictions, Father argued the notice of criminal contempt failed to specifically state essential facts concerning each ground as required by Tenn. R. Crim. P. 42(b). With regard to Father's guilty plea to 10 additional counts, Father contended the plea and sentence were fatally flawed because the trial court failed to ascertain whether Father's guilty plea was knowingly and voluntarily entered as Tenn. R. Crim. P. 11(b) requires. The trial court vacated 55 of the 60 initial convictions, finding the notice of criminal contempt failed to state essential facts as required by Tenn. R. Crim. P. 42(b); however, the order that followed held Father in criminal contempt for sending a text to Mother at 10:11 a.m. on June 20 for which Father had been acquitted following trial. The court also set aside Father's guilty plea to 10 of the 133 additional counts in the second petition because the court failed to advise and question Father before accepting a plea as required by Tenn. R. Crim. P. 11(b). The trial court also ruled, over Father's objections, that Mother could prosecute Father on all 133 counts in the second petition. In this appeal, Father contends the trial court violated the constitutional prohibitions against double jeopardy by (1) finding Father guilty of a count of criminal contempt for which he had been acquitted following trial, and (2) allowing Mother to prosecute her second

petition. Because double jeopardy prohibits a prosecution after an acquittal on the same count, we vacate Father's conviction for criminal contempt for sending a text to Mother at 10:11 a.m. on June 20. As for allowing Mother to prosecute all 133 counts in her second petition, the agreed order, in which Father pled guilty to 10 counts, failed to specifically identify any of the counts for which Father pled guilty or any of the counts for which he was acquitted; therefore, jeopardy did not attached to any of the 133 counts. Accordingly, we affirm the trial court's decision allowing Mother to prosecute the 133 counts in her second petition.

**Tenn. R. App. P. 9 Interlocutory Appeal; Affirmed in Part, Reversed in Part, Vacated in Part and Remanded**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which CHARLES D. SUSANO JR. and JOHN W. MCCLARTY JJ., joined.

Wanda G. Sobieski, Diane M. Messer, and Caitlin Elledge, Knoxville, Tennessee, for the appellant, Joseph Charles Marlow.

Kevin W. Shepherd and D. Chris Poulopoulos, Maryville, Tennessee, for the appellee, Amy Brasfield Marlow.

**OPINION**

Amy Marlow ("Mother") and Joseph Marlow ("Father") divorced on October 2, 2012, and a Permanent Parenting Plan was incorporated into the parties' Final Decree of Divorce.

On June 19, 2014, Mother filed a petition for criminal contempt ("Petition 1"),[1] alleging Father violated the following provision in the permanent parenting plan:

Both parents are entitled to be free of derogatory remarks made about such parent or such parent's family by the other parent to or in the presence of the child. T.C.A. § 36-6-101(6).

Petition 1 was tried over three days on September 8, 9, and 15, 2015. At the conclusion of the trial, the court found Father guilty of 60 separate counts of criminal contempt. In its oral ruling, which was incorporated into the trial court's final order of October 15, 2015, the trial court identified each communication with specificity that constituted an act of contempt. Five of the 60 counts for which Father was found in criminal contempt pertained to Father's communications on June 20, 2015. Specifically,

---

[1] Mother amended the petition twice, once on March 25, 2016, and once on August 18, 2015.

the court found Father guilty of criminal contempt for sending texts to Mother at 9:53 a.m., 11:07 a.m., 11:26 a.m., 11:42 a.m., and 8:25 p.m. One of the counts for which Father was acquitted was for a text sent to Mother at 10:11 a.m. on June 20, 2015, which is significant for reasons discussed below.

The trial court sentenced Father to ten days for each offense, for a total of 600 days of incarceration; however, the court ordered that Father serve eight days, with 592 days suspended, provided Father complied with the court's orders in the future.

In the interim, Mother filed a Petition to Modify Permanent Parenting Plan and on August 19, 2014, the parties entered into a Temporary Parenting Plan that read in pertinent part:

> [Father] is enjoined and restrained from sending email and texts to [Mother] with offensive language about [Mother], for the purpose to harass [Mother], or without a legitimate purpose of communication about the children.

On February 5, 2016, Mother filed her second petition for criminal contempt which contained 133 counts ("Petition 2").[2] Instead of trying the issues, the parties came to an agreement regarding Petition 2, and presented an agreed order to the trial court pursuant to which Father would plead guilty to 10 unspecified counts, with a sentence of 10 days for each count, and the remaining counts would be dismissed. The agreement additionally provided that, in exchange for Father's guilty plea, Father's 100-day sentence for the 10 unspecified violations would be suspended. The agreed order also provided that Father's 592-day suspended sentence arising from Petition 1 would be held in abeyance subject to his strict compliance with court orders.

Additionally, the parties agreed to modifications to the parenting plan, which included prohibiting Father from visiting the children at school without Mother's written consent and limiting Father to three phone calls per week with the children. The agreement also prohibited Father from coming within "visual distance" of Mother's residence and five other specified locations without Mother's express written consent. The trial court approved the parties' agreed order, which included Father's guilty plea; however, the court did not conduct a plea colloquy as required by Tenn. R. Crim. P. 11 to determine if Father's guilty plea was knowingly, voluntarily, and intelligently entered. The agreed order was entered on May 26, 2016.

---

[2] The alleged acts of contempt in Petition 1 pertained to the prohibition against derogatory remarks made in the presence of the child while the alleged acts of contempt in Petitions 2 and 3 mostly pertained to Father sending email and texts to Mother with offensive language about Mother in violation of the injunction in the Temporary Parenting Plan.

On July 7, 2016, Mother filed a third petition for contempt ("Petition 3") alleging thirteen counts against Father, most of which concerned alleged violations of provisions in the May 2016 agreed order. Father filed an answer to Mother's petition and also filed a counter-petition for contempt alleging 48 counts against Mother.

Additionally, and more pertinent to this appeal, Father filed a Motion to Alter or Amend and/or Rule 60.02 Motion requesting that the trial court reverse 58 of the 60 counts of criminal contempt found against Father in the court's October 2015 decision, arguing they were constitutionally flawed on due process grounds because the notice of criminal contempt failed to specifically state essential facts as required by Tenn. R. Crim. P. 42(b). In the same motion, Father also sought relief from the May 2016 agreed order in which he pled guilty to 10 counts, contending the plea and sentence were fatally flawed because the trial court failed to ascertain whether Father's guilty plea was knowingly and voluntarily entered as Tenn. R. Crim. P. 11(b) requires.

The trial court agreed, in part, and on January 18, 2017, entered an order that read in pertinent part:

> In the Court's Order entered October 15, 2015, the Court found that Father had sixty violations of the Order of Protection. Within those original sixty instances of contempt, the Court finds and holds that . . . five violations were properly pled and were proved beyond a reasonable doubt. The Court finds that Father should be sentenced to Fifty (50) days of incarceration for these five instances of contempt. In determining that sentence, the Court has taken into account the provisions of Tennessee Code Annotated § 40-35-115. By a preponderance of the evidence, the Court finds that consecutive sentencing is appropriate in that the Father is being sentenced for criminal contempt (Tenn. Code Ann. § 40-35-115(7)), that the Father's conduct had previously been addressed by the Court and the Court's own expert, and that Father, despite the clear instruction of this Court engaged in behavior that, but for the failure of Mother's pleading, would have supported the Sixty (60) violations found by this Court in its original order. Father has served eight days of the sentence and there are Fifty-two days that are being held in abeyance.

The five violations the court found to have been properly pled and proved beyond a reasonable doubt were communications between Mother and Father at 9:53 a.m. on June 20, 10:11 a.m. on June 20, 7:00 a.m. on June 22, 7:10 a.m. on June 22, and 9:55 a.m. on June 22, 2015. Thus, the trial court held Father in criminal contempt for these five counts, imposed a sentence of 50 days, and vacated Father's convictions on the other 55 counts. However, one of the five counts the court determined was properly pled and proved, the count pertaining to the 10:11 a.m. text on June 20, 2015, was not among the

60 counts for which Father was found guilty in the October 2015 order. To the contrary, and significantly, Father had been acquitted on this count pursuant to the October 2015 order.

In the same order, the trial court also set aside the May 26, 2016 agreed order pursuant to which Father pleaded guilty to 10 unspecified counts. The trial court's reasons for setting aside the guilty plea read in pertinent part:

> After reviewing the applicable law, the Court finds that Father's guilty plea entered on May 27, 2016 cannot stand. The Court did not comply with Rule 11(b) of the Tennessee Rules of Criminal Procedure. Father now asserts that, at the time he entered into the plea that he "was in no position to negotiate anything. I just had to give in to whatever was demanded." While that belief alone is not dispositive and does not require the plea to be set aside, it is something Father should have been able to express to the Court if the procedures required by Rule 11(b) had been observed. Had the procedure been followed, the Court could have advised Father of the rights he had under Rule 11(b) and determined whether Father's plea was knowingly and voluntarily made. The Father's guilty plea is hereby set aside. Counsel for Father asserts that, if the Court vacates Father's guilty plea, he cannot be prosecuted for the allegations of contempt to which he pleaded guilty. The Court finds that this position is in error.

Shortly thereafter, Father filed a motion to dismiss Counts 1, 4, 5, 6, and 10 in Petition 3 because each count was based on Father's alleged violations of provisions of the May 2016 agreed order that included the guilty plea that the court had since set aside. It was Father's contention that all of the provisions in the order were nullified when the trial court set aside the guilty plea because the guilty plea formed the basis of the parties' agreement. As Father stated in his motion to dismiss:

> 8. It is well established that an agreed order is a binding contract representing the achievement of an amicable result in pending litigation. *Demquarter Healthcare Investors, LP v. OP Chattanooga, LLL*, No. E2016-00031-COA-R3-CV, 216 Tenn. App. LEXIS 1001, December 29, 2016 at *18. Because a substantial and material term of that contract failed and because over five hundred (500) of the suspended days were voided, it is the position of Mr. Marlow that the entire May 2016 Order is void.

The trial court denied the motion.

Father then filed a Tenn. R. App. P. 9 Motion for Interlocutory Appeal on two grounds. First, Father argued that the court violated the double jeopardy provision in both the federal and state constitutions by making new findings of criminal contempt in its

January order. Second, Father argued that the court's decision to set aside only part of the May 2016 agreed order and to put Father on trial for all of the original contempt charges related to the May 2016 agreed order implicated double jeopardy as well. The trial court granted Father's motion, and by order entered on August 7, 2017, we granted Father's Tenn. R. App. P. 9 appeal for the limited purpose of determining "whether the prosecution of [Father] on the various charges of criminal contempt arising out of the proceedings below violates state and federal constitutional prohibitions against twice being placed in jeopardy for the same offense."

## ANALYSIS

Constitutional questions are issues of law which we review de novo with no presumption of correctness given to the trial court's legal conclusions. *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009).

"Although contempt proceedings are traditionally classified as 'civil' or 'criminal,' in point of fact, contempt proceedings are neither wholly civil nor criminal in nature and may partake of the characteristics of both." *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013). Because criminal contempt has both civil and criminal elements, defendants in criminal contempt proceedings are afforded some, but not all, of the same constitutional protections as criminal defendants. *Id.* at 436. Our Supreme Court has held that the double jeopardy protections provided by the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Tennessee Constitution apply to defendants in criminal contempt proceedings. *Ahern v. Ahern*, 15 S.W.3d 73, 80 (Tenn. 2000).

Article I, Section 10 of the Tennessee Constitution provides "[t]hat no person shall, for the same offense, be twice put in jeopardy of life or limb." The double jeopardy protections offered by the state and federal constitutions are "co-extensive." *State v. Watkins*, 362 S.W.3d 530, 548 (Tenn. 2012). Double jeopardy protects criminal defendants against "(1) a second prosecution following an acquittal; (2) a second prosecution following a conviction; and (3) multiple punishments for the same offense." *Id*.

### I. THE 10:11 A.M. TEXT ON JUNE 20, 2015

Father argues, and Mother concedes, that one of the trial court's findings of contempt in its January 2017 order violates double jeopardy.[3] We also agree.

---

[3] Mother states in her brief, "Appellee acknowledges that this single contempt is possibly barred by Double Jeopardy."

Mother alleged in Petition 1 that Father violated a provision in the parenting plan by sending a specific text on June 20, 2015 at 10:11 a.m. After a trial, the court found in its October 2015 order that Father was guilty of 60 counts of criminal contempt, which included five texts Father sent to Mother on June 20, 2015—texts sent at 9:53 a.m., 11:07 a.m., 11:26 a.m., 11:42 a.m., and at 8:25 p.m. The count pertaining to the text sent at 10:11 a.m. on June 20 was not one of the counts for which Father was found to be in contempt; thus, Father was acquitted of this alleged offense.

In the order entered in January 2017, the trial court vacated all but five of the 60 counts of contempt found in the October 2015 order but held that Father's text to Mother at 10:11 a.m. on June 20, 2015, was contemptuous. Because double jeopardy protects criminal defendants against a second prosecution for the same offense following an acquittal, the conviction of criminal contempt for sending the 10:11 a.m. text to Mother must be vacated.

## II.     THE PLEA AGREEMENT

Father argues that the trial court acquitted him of 10 counts of criminal contempt when it set aside his guilty plea; therefore, double jeopardy prevents further prosecution of these charges. Father also contends the counts for criminal contempt in Petition 3 that are based on other provisions of the May 2016 agreed order must be dismissed. Specifically, he argues that a plea agreement is a contract, the plea deal was a significant element of the agreed order and, therefore, the agreed-upon provisions on which Mother relies in prosecuting Petition 3 were invalidated when the plea agreement was set aside.

For her part, Mother argues that double jeopardy does not prevent her from prosecuting all 133 counts in Petition 2 because Father was not acquitted of these charges. Instead, the guilty plea was set aside on procedural grounds, as distinguished from a finding of insufficient evidence, which would constitute an acquittal. As for enforcing the remaining provisions of the agreed order, Mother insists the terms of the plea agreement are severable and enforceable.

We agree with Mother's argument that she is not barred based on double jeopardy from prosecuting Petition 2 because the guilty plea was set aside on procedural grounds; not on a finding the evidence was insufficient to support a conviction. We have also determined that double jeopardy has not attached to any of the 133 counts in Petition 2 because the agreed order failed to identify the specific counts of criminal contempt to which Father pleaded guilty. As for the remaining provisions of the agreed order, we agree with Father, having determined that the provisions upon which Mother relies in prosecuting Petition 3 are not severable.

In *State v. Hutcherson*, 790 S.W.2d 532 (Tenn. 1990), our Supreme Court considered whether a defendant could be retried following a reversal of the conviction on

appeal. In its analysis of the issue, the court noted the United States Supreme Court had reaffirmed the rule that

> where the reversal is for trial error, the case may be remanded for a new trial without violating the Double Jeopardy Clause, but where an appellate court finds the prosecution's proof on the issue of guilt or innocence of defendant was insufficient to convict, Double Jeopardy commands a dismissal.

*Id.* at 534 (citing *Burks v. United States*, 437 U.S. 1 (1978)).

After stating that the issue in *Hutcherson* was whether failure to establish venue is trial error or insufficiency of evidence, the court found "clues" in the *Burks* Court's examination of the rationales behind the two types of reversals and quoted from that decision:

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair re-adjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. *See* Note, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U.Chi. L. Rev. 365, 370 (1964).

> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have ever been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

*Id*. at 534-35 (quoting *Burks*, 437 U.S. at 15-16).[4]

It is undisputed that the court set aside Father's guilty plea to 10 counts of criminal contempt on procedural grounds, the trial court's failure to ascertain whether Father's guilty plea was knowingly and voluntarily entered as Tenn. R. Crim. P. 11(b) requires, not on a finding that the evidence was insufficient. Accordingly, the setting aside of the guilty plea on procedural grounds does not prevent Mother from prosecuting the counts that the court set aside.

In addition to the foregoing reasoning, it is significant that Father did not plead guilty to any *specific* charges; to the contrary, he pled guilty to ten *unspecified* counts of criminal contempt. This is significant because double jeopardy prohibits retrial on the *same specific charge* following an acquittal or a conviction. *See State v. Clark*, No. M2010-00570-CCA-R3-CD, 2012 WL 3861242, at *23 (Tenn. Crim. App. Sept. 6, 2012), aff'd, 452 S.W.3d 268 (Tenn. 2014) (requiring the prosecution to elect the particular offense for which a conviction is sought "protects a defendant against double jeopardy by prohibiting retrial on the same specific charge."); *see also State v. Adams*, 24 S.W.3d 289, 294 (Tenn. 2000). Because it cannot be established which 10 of the 133 counts Father pled guilty to, and all 10 convictions have been set aside for procedural reasons, jeopardy has not attached to any of the 133 counts set forth in Petition 2. Accordingly, Mother may prosecute any or all of the counts in Petition 2.

For a different reason, the same cannot be said for all of the counts in Petition 3, specifically Counts 1, 4, 5, 6, and 10. In the May 2016 agreed order, Mother promised not to prosecute the counts of criminal contempt alleged in Petition 2, and in exchange, Father not only agreed to plead guilty to 10 counts of contempt, he also agreed to, *inter alia*, limit the number of phone calls he made to his children, limit the time he could spend with his children, and limit the places he could travel. After setting aside Father's guilty plea to 10 counts of contempt, the court relieved Mother of her obligations under the agreed order, including her promise not to prosecute Petition 2, while holding Father to his remaining promises under the agreement, some of which form the basis of the counts in Petition 3. We have determined this was error for the following reasons.

As our Supreme Court explained in *State v. Howington*, 907 S.W.2d 403, 407 (Tenn. 1995), "Plea agreements, unlike immunity agreements, have been treated as contracts and are enforceable once the condition precedent is met; that is, the trial judge accepts the agreement." (citations omitted). "This is consistent with basic contract

---

[4] Our Supreme Court in *Hutcherson* also noted that the *Burks* Court quoted with approval from *United States v. Tateo*, 377 U.S. 463 (1964) "that the Double Jeopardy Clause does not preclude retrying a defendant whose conviction is set aside because of an *error in the proceedings*." *Id*. at 535 (emphasis in original).

principles that an agreement does not become binding until the condition precedent has been met." *Id.* (citations omitted). Here, the condition precedent was the trial court's approval of the plea agreement, the terms of which were set forth in the agreed order. Although the trial court initially approved the agreement, the court subsequently rescinded its approval by setting aside the guilty plea, thereby rendering the plea agreement a nullity.

"A conditional contract is a contract whose very existence and performance depends upon the happening of some contingency or condition expressly stated therein." *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986) (quoting *Real Estate Management v. Giles*, 293 S.W.2d 596, 599 (1956)). Moreover, "[n]o liability under the contract attaches to either party until such condition precedent is fulfilled. *Id.* (citing *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn. Ct. App. 1981)). By setting aside the plea agreement set forth in the May 2016 agreed order, the court revoked its approval of the agreement, which was essential to the contract being fulfilled. As a consequence, neither Mother nor Father is liable under the agreement. *See id.*; *see also Strickland*, 611 S.W.2d at 837. Accordingly, the other provisions of the agreed order cannot be enforced against Father in the prosecution of Petition 3.[5]

## IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and vacated in part, and this matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed equally against Amy Brasfield Marlow and Joseph Charles Marlow.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[5] Because the essential condition precedent to the conditional contract has failed, Mother's request to sever the guilty plea and enforce the remainder of the contract is mooted.