IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 28, 2023 Session

## DENISE PHILLIPS JONES v. KELVIN DOMINIC JONES

Appeal from the Circuit Court for Davidson County
No. 19D1454        Robert E. Lee Davies, Senior Judge
_____

### No. M2022-00624-COA-R3-CV
_____

This appeal arises from a divorce. Prior to the marriage, the parties signed an antenuptial agreement that included a provision whereby Husband's son from a prior marriage would be entitled to one-fourth of the value of the marital property upon divorce. During proceedings in the trial court, Husband filed a petition to hold Wife in criminal contempt. The trial court dismissed Husband's petition for contempt, granted Husband a divorce on the uncontested ground of adultery, found the provision regarding Husband's son to be unenforceable, and equitably divided the parties' marital property. The trial court also declined to award Husband his requested discretionary fees. Primarily based on Husband's failure to follow briefing requirements, we affirm the trial court's judgment on all issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KENNY ARMSTRONG, J., joined.

Kelvin D. Jones, Nashville, Tennessee, Pro se.

Ben H. Houston, II, Knoxville, Tennessee, for the appellee, Denise Phillips Jones.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Appellee Denise Phillips Jones ("Wife") and Defendant/Appellant Kelvin D. Jones, ("Husband") were married on June 1, 2007. At the time of the marriage, Husband had a two-year old son from a previous relationship. Husband shared equal custody over

the child ("K.J."), with the child's mother. The parties' daughter ("A.J."), was born in September 2009.

At the time of the marriage, both parties were licensed attorneys. The day prior to the marriage, the parties entered into an antenuptial agreement. At the time the agreement was signed, Husband's net worth was significantly higher than Wife's, as indicated by the lists of separate assets attached as exhibits to the agreement. The parties agreed that, "[i]n the event of separation or divorce, neither party will request or seek support, alimony, nor the other party's property, (including retirement plans or trusts) but each shall retain his or her property" and that "[j]oint property is to be equally divided." The agreement also stated in paragraph six that "in no event shall [K.J.] be the beneficiary or any less than one-fourth (1/4) of the value of the marital property." In September 2007, the parties entered into an estate plan. Then in March 2008, the parties executed an amendment to the antenuptial agreement, indicating that the estate plan would control, to the extent it contradicted the original agreement.

At some point, the parties' marriage began deteriorating. Wife filed for divorce on the ground of irreconcilable differences in the Circuit Court for Davidson County ("the trial court") on August 20, 2019. Included with her filing was a notice of revocation of any permission Husband had to utilize Wife's passwords or accounts. Husband filed an answer and counter-complaint on September 25, 2019. Husband admitted to irreconcilable differences between the parties and also raised as grounds Wife's inappropriate marital conduct and adultery. As an exhibit to his pleading, Husband filed a copy of the parties' May 31, 2007 antenuptial agreement and the March 27, 2008 amendment. Husband also filed a revocation of Wife's access to his passwords and accounts. In her October 25, 2019 answer, Wife denied inappropriate marital conduct but admitted to adultery. Wife also included in her answer the affirmative defense of Husband's ill conduct. Wife then amended her complaint by consent on December 5, 2019, again alleging irreconcilable differences but also including an alternative ground of inappropriate marital conduct by Husband. Husband denied any inappropriate marital conduct on his part in his December 20, 2019 answer.

On May 11, 2020, Husband filed a motion for partial summary judgment. Therein, Husband argued that there were no genuine issues of material fact as to the validity and enforceability of the antenuptial agreement or the classification as marital property of two properties purchased after the marriage. In her response, Wife indicated that while she did not dispute the general enforceability of the antenuptial agreement, she did not agree with Husband's interpretation of the agreement. Wife specifically argued that paragraph six of the agreement, regarding K.J.'s receipt of one-fourth of the marital estate, was not enforceable. Wife also argued that one of the properties at issue was her separate property and that there was a material dispute as to the status of the second property. By order of August 5, 2020, the trial court granted Husband's motion for summary judgment with respect to the validity and enforceability of the antenuptial agreement. However, the trial

court found that genuine issues of material fact existed as to the classification of the property acquired during the marriage and denied the motion in that regard.

Husband filed a petition for criminal contempt on September 11, 2020. Therein, Husband alleged that Wife had (1) removed him as a life insurance beneficiary[1] and as a beneficiary under her will, and (2) failed to make mortgage payments on the marital residence for May, June, and July 2020, and that she was thus guilty of five counts of criminal contempt. Wife argued that the statute of limitations barred Husband's complaint for criminal contempt regarding changes to her life insurance beneficiary,[2] and that the remainder of Husband's claims did not constitute criminal contempt and should be dismissed.

Trial occurred over several days in October 2020. The trial court first heard Husband's motion for criminal contempt, then the divorce. By order of October 28, 2020, the trial court dismissed Husband's petition for criminal contempt in its entirety. The trial court then entered its order of absolute divorce on November 3, 2020. Husband was granted a divorce on the basis of Wife's admitted adultery. After discussing the statutory best interest factors, the trial court awarded the parties equal residential time with A.J. on a week-to-week basis. As to paragraph six of the antenuptial agreement, directing that K.J. receive no less than one-fourth of the value of the parties' marital property, the trial court found that "[i]n this case, there could be no meeting of the minds since there was no marital property in existence at the time of the execution of the contract, and [the] only marital property described in the agreement was 'jointly titled' property." Accordingly, the trial court found this provision to be unenforceable.

The trial court then discussed the classification and division of the parties' property. The trial court found that the parties' antenuptial agreement "[did] protect the separate property of the parties acquired prior to the marriage and any increase in value of that property." And while the agreement provided that any property acquired after the marriage and titled jointly was to be divided equally, the agreement was "silent as to property acquired after marriage that [was] not titled or [was] in only one of the parties' names." Thus, the trial court directed that statutory factors would control as to the division of all property acquired after the marriage that was not jointly titled. Based on the parties'

---

[1] Husband first raised the issue of Wife removing him as her life insurance beneficiary in his response to Wife's second motion for exclusive possession of the marital residence. Wife's first motion for exclusive possession and other sanctions alleged that Husband had accessed her personal and work emails, including some containing attorney-client privilege protected communications, without permission and placed a hidden camera in the parties' shared bedroom without her consent. Husband's conduct in this regard would be the subject of numerous motions and an issue at trial. Eventually, the trial court ruled that Husband was not permitted to utilize any of the information he learned from accessing Wife's emails in his case-in-chief.

[2] Wife also argued that the trial court's prohibition on using information Husband learned from Wife's emails without her consent prevented his litigating this count. Moreover, Wife had already reinstated Husband as her life insurance beneficiary prior to Husband's motion.

intentional separation of finances, the trial court focused on an equitable division of the marital estate, rather than an equal split. Husband was awarded $680,065.00 in separate property and roughly $900,000.00 in marital property. Wife was awarded $227,010.00 in separate property and approximately $1.2 million in marital property. Wife was also awarded her attorney's fees only in relation to successfully defending against Husband's petition for criminal contempt. However, Wife's attorney's fees award was reduced by one-half of the amount Wife dissipated from the marital estate in relation to her affairs.

Husband filed several post-trial motions. First, on November 30, 2020, Husband filed a motion to alter or amend the trial court's judgment on his petition for criminal contempt. Then on December 3, 2020, Husband filed a motion requesting a total of $3,575.00 in discretionary fees as the prevailing party at trial. The same day, Husband filed a motion to alter or amend the trial court's November 3, 2020 final order. In that motion, Husband (1) referenced two findings of fact made in the trial court's order that he alleged were inconsistent with the proof; (2) took issue with the trial court's division of equity in the parties' marital residence and the trial court's valuation of the parties' assets; (3) alleged that an expert report relied upon by the trial court was "flawed in its analysis and fail[ed] to substantially assist the trier of fact"; (4) argued that K.J. was an intended third-party beneficiary of the parties' antenuptial agreement and was entitled to one-fourth of the value of the marital estate; and (5) again argued that Wife was not entitled to her attorney's fees in defending against his petition for criminal contempt. Eventually, on March 21, 2022, Wife filed a response in opposition to Husband's post-trial motions and requested that she be awarded attorney's fees for defending against them.

Husband's post-trial motions were heard on March 29, 2022, and denied by order of April 14, 2022. Husband's motion for discretionary costs was denied based on Husband's conduct throughout the litigation as well as Husband's use of illegally obtained attorney-client privileged information. Husband's motion to alter or amend the trial court's dismissal of his petition for criminal contempt was also denied based on Husband's use of illegally obtained attorney-client privileged information. Husband's motion to alter or amend the trial court's November 3, 2020 order was denied in its entirety.[3] Wife was only awarded her attorney's fees associated with Husband's motion to alter or amend the order dismissing his petition for criminal contempt.

Husband then filed a motion to alter or amend the trial court's April 14 order denying his post-trial motions on May 13, 2022. Husband argued that the trial court's written order did not comport with its oral findings and conclusions from the prior hearings. Also on May 13, 2022, Husband filed his notice of appeal to this Court. The trial court denied Husband's second motion to alter or amend by order of May 26, 2022.

## II. Issues Presented

---

[3] The trial court did note one slight misstatement of fact in its earlier order, which it clarified.

Husband has raised six issues on appeal, which we have slightly restated and reordered for clarity:

1. Whether the trial court erred in dismissing count one of Husband's petition for criminal contempt.

2. Whether the trial court erred in denying Husband's motion for discretionary fees.

3. Whether the trial court erred because language in its April 14, 2022 final order is inconsistent with the transcript of the March 29, 2022 hearing.

4. Whether the trial court erred in by denying Husband's second motion to alter or amend.

5. Whether the trial court erred in discouraging Husband from putting on proof of Wife's inappropriate marital conduct unrelated to her admitted adultery.

6. Whether the trial court erred in not enforcing paragraph six of the parties' antenuptial agreement.

In the posture of Appellee, Wife requests her attorney's fees on appeal.

### III. STANDARD OF REVIEW

Because this is an appeal from a bench trial, we review the trial court's factual findings de novo, with a presumption of correctness unless the evidence preponderates otherwise. *Law v. Law*, No. E2021-00206-COA-R3-CV, 2022 WL 1221084 (Tenn. Ct. App. Apr. 26, 2022) (citing *Boote v. Shivers*, 198 S.W.3d 732, 740 (Tenn. Ct. App. 2005); Tenn. R. App. P. 13(d)). "[F]or the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Boote*, 198 S.W.3d at 741. The presumption of correctness does not apply to the trial court's legal conclusions, which are reviewed de novo. *Id.*

### IV. ANALYSIS

Before addressing the merits of this action, we note that Husband is proceeding pro se in this appeal. As such, we keep the following principles in mind:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. . . . However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we

- 5 -

> measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

**Toomes v. D & S Motors**, No. W2022-00244-COA-R3-CV, 2022 WL 17481406, at *3 (Tenn. Ct. App. Dec. 7, 2022) (quoting **Hessmer v. Hessmer**, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). It is also important to note, however, that Husband was represented by counsel throughout the trial court proceedings and is himself a licensed attorney. Thus, it should not be necessary to afford Husband the same leeway as pro se litigants who have "no legal training and little familiarity with the judicial system." **Hessmer**, 138 S.W.3d at 903.

## A.

Husband's first issue relates to the trial court's dismissal of count one of his petition for criminal contempt. After hearing Husband's proof at trial, the trial court dismissed the petition and later denied Husband's motion to alter or amend the dismissal order. Wife argues that any further prosecution of the criminal contempt petition is barred by constitutional prohibitions against double jeopardy.

"Our Supreme Court has held that the double jeopardy protections provided by the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Tennessee Constitution apply to defendants in criminal contempt proceedings." **Marlow v. Marlow**, 563 S.W.3d 876, 882 (Tenn. Ct. App. 2018) (citing **Ahern v. Ahern**, 15 S.W.3d 73, 80 (Tenn. 2000)); *see also* **Overnite Transp. Co. v. Teamsters Local Union No. 480**, 172 S.W.3d 507, 510 (Tenn. 2005) ("Criminal contempt cases are subject to the double jeopardy provisions in the federal and state constitutions. Thus, an appeal from an acquittal of criminal contempt is barred." (internal citations omitted)). Indeed, in his reply brief, Husband "recognize[d] that an acquittal of criminal contempt implicates the Constitution's double jeopardy provision, thus an appeal from an acquittal of criminal contempt is barred." (Citing **Adkisson v. Adkisson**, No. E2012-00174-COA-R3-CV, 2013 WL 936369 (Tenn. Ct. App. Mar. 11, 2013)). This issue is therefore without merit.

Husband also appears to take issue with the trial court granting Wife her attorney's fees associated with defending against the petition for criminal contempt. However, Husband failed to designate any attack on the trial court's attorney's fees award as an issue upon appeal;[4] this argument is therefore waived. *See* **In re Tamera W.**, 515 S.W.3d 860, 873 (Tenn. Ct. App. 2016) ("This Court has repeatedly held that the failure to designate an argument as an issue in the party's appellate brief results in a waiver of the argument on appeal.").

---

[4] Although we have slightly restated Husband's issues above, no significant changes were made regarding this issue. As written in his brief, Husband's statement of this issue is as follows: "Whether the Trial Court erred in dismissing Count 1 of Husband's Petition for Criminal Contempt."

**B.**

Husband also argues that the trial court erred in denying his motion for discretionary costs, both because he was the prevailing party at trial and because the trial court's reasoning in denying the motion differed between the March 29, 2022 hearing on the motion and its April 14, 2022 order.

The award of discretionary costs is governed by Tennessee Rule of Civil Procedure 54.04. Under that rule, expenses not included in the bill of costs "are allowable only in the court's discretion." Tenn. R. Civ. P. 54.04(2) (specifically allowing for the recovery of "reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials" as well as certain interpreter fees and guardian ad litem fees). Accordingly, this Court employs a "deferential standard when reviewing a trial court's decision either to grant or to deny motions to assess these costs" and we "are generally disinclined to second-guess a trial court's decision unless the trial court has abused its discretion." *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002) (citations omitted). As the Tennessee Supreme Court has explained:

> An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted).

Parties are not entitled to their discretionary costs under Rule 54.04 simply because they prevail at trial. *Mitchell v. Jackson Clinic, P.A.*, 420 S.W.3d 1, 12 (Tenn. Ct. App. 2013) (citing *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998)). A trial court's decision regarding costs may be influenced by the "particular equities of the case[.]" *Id.* (citing *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992); *Stalsworth v. Grummons*, 36 S.W.3d 832, 835 (Tenn. Ct. App. 2000)). "However, the courts should, as a general matter, award discretionary costs to a prevailing party if the costs are reasonable and necessary and if the prevailing party has filed a timely and properly supported motion." *Mass. Mut. Life Ins. Co.*, 104 S.W.3d at 35 (citing *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 84 (Tenn. Ct. App. 2000)). Thus, when determining whether to award discretionary costs, courts should:

(1) determine whether the party requesting the costs is the "prevailing party,"

(2) limit awards to the costs specifically identified in the rule, (3) determine whether the requested costs are necessary and reasonable, and (4) determine whether the prevailing party has engaged in conduct during the litigation that warrants depriving it of the discretionary costs to which it might otherwise be entitled.

*Id.* at 35–36 (footnoted citations omitted).

We acknowledge that the trial court awarded Husband a divorce based on Wife's admitted adultery, which was part of the relief sought by Husband in his counter-complaint. *See* ***Buckley v. Carlock***, 652 S.W.3d 432, 445 (Tenn. Ct. App. 2022) (noting that a prevailing party "is one who has succeeded 'on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit.'" (quoting ***Fannon v. City of LaFollette***, 329 S.W.3d 418, 431 (Tenn. 2010))), *perm. app. denied* (July 13, 2022); ***Owens v. Owens***, 241 S.W.3d 478, 497 (Tenn. Ct. App. 2007) ("When discretionary costs are awarded in divorce cases, they are generally awarded to the spouse who is granted the divorce."). And no issue has been raised regarding the availability or reasonableness of the costs requested by Husband.

However, the trial court stated in its April 14, 2022 order that Husband's motion for discretionary fees was denied "due to the conduct engaged in by the Husband during the course of the litigation including the Husband's use of attorney/client privileged communications that were illegally obtained." The trial court also noted that Wife had never contested the charge of adultery and ultimately found that "when considering the totality of the circumstances[,] the equities of this case are such that an award of discretionary costs are inappropriate." So it appears that even if Husband was properly considered to be the prevailing party, the trial court determined that Husband "engaged in conduct during the litigation that warrant[ed] depriving [him] of the discretionary costs to which [he] might otherwise be entitled." ***Mass. Mut. Life Ins. Co.***, 104 S.W.3d at 35. There was evidence in the record regarding Husband inappropriately accessing Wife's emails and then using the information he gained from Wife's communications with her attorney during the course of the litigation, even after being specifically prohibited from doing so by the trial court. Therefore, we cannot say that the trial court applied an incorrect legal standard, reached an illogical decision, or otherwise based its decision on an erroneous assessment of the evidence. ***Lee Med., Inc.***, 312 S.W.3d at 524. Discretionary decisions are not for this Court to second guess in the absence of evidence of an abuse of discretion. ***Mass. Mut. Life Ins. Co.***, 104 S.W.3d at 35.

Husband also notes that the reasoning in the trial court's April 14, 2022 order does not match that set out during the March 26, 2022 hearing on his post-trial motions.[5]

_____

[5] We note that the trial court's order indicates that it was prepared for entry by counsel for Wife. To the extent Husband might have been attempting to raise an argument regarding the trial court's adoption

However, as this Court has recently explained:

> "It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts[.]" ***Williams v. City of Burns***, 465 S.W.3d 96, 119 (Tenn. 2015) (quoting ***Anil Constr. Inc. v. McCollum***, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at \*8 (Tenn. Ct. App. Aug. 7, 2014)) (footnote and additional citations omitted); ***In re Adoption of E.N.R.***, 42 S.W.3d 26, 31 (Tenn. 2001). Additionally, an oral ruling—even if considered a valid order—is an interlocutory order that is "subject to revision at any time prior to 'entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.'" ***Frank Rudy Heirs Assocs. v. Sholodge, Inc.***, 967 S.W.2d 810, 813 (Tenn. Ct. App. 1997) (quoting Tenn. R. Civ. P. 54.02.). In short, "[a] judgment must be reduced to writing in order to be valid. It is inchoate, and has no force whatever, until it has been reduced to writing and entered on the minutes of the court, and is completely within the power of the judge . . . ." ***Broadway Motor Co. v. Pub. Fire Ins. Co.***, 12 Tenn. App. 278, 280, 1930 WL 1696, \*2 (Tenn. Ct. App. Sept. 20, 1930), *perm. app. denied* (Tenn. Jan. 17, 1931). A trial court may reconsider the proof and the applicable law and "amend its judgment at any time before the judgment becomes final." ***In re Taylor B.W.***, 397 S.W.3d 105, 112 (Tenn. 2013) (citation omitted). Accordingly, "[w]e do not review the court's oral statements, unless incorporated in a decree . . . ." ***Steppach v. Thomas***, 346 S.W.3d 488, 522 (Tenn. Ct. App. 2011) (quoting ***Shelby v. Shelby***, 696 S.W.2d 360, 361 (Tenn. Ct. App. 1985)).

***In re Emarie E.***, No. E2022-01015-COA-R3-PT, 2023 WL 3619594, at \*4 (Tenn. Ct. App. May 24, 2023) (some internal quotation marks and recursive citation omitted). Because the trial court was permitted to alter its reasoning before entering its written order, this argument is without merit. We affirm the trial court's decision to deny Husband's request for discretionary costs.

## C.

Husband's next issue is based on a similar argument: that the trial court should amend its April 14, 2022 order because the language therein is inconsistent with that used during the March 29, 2022 hearing. We therefore employ the same reasoning as above: an oral ruling "has no force whatsoever, until it has been reduced to writing and entered on the minutes of the court[.]" ***Broadway Motor Co.***, 12 Tenn. App. at 280, 1930 WL 1696,

---

of findings and conclusions submitted by a party, he provided no citation to relevant legal authority. We therefore decline to address the argument. *See **In re Britton H-S.***, No. M201-601576-COA-R3-JV, 2018 WL 1040945, at \*3 (Tenn. Ct. App. Feb. 23, 2018) (distinguishing between an argument that a trial court erred in deviating from its oral ruling and an argument that the trial court failed to exercise its independent judgment, and declining to review the trial court's oral statements when the latter was not raised).

at \*2; *see also* **In re Britton H-S.**, 2018 WL 1040945, at \*3 (finding that where the oral ruling is not incorporated into the written decree, "any inconsistencies between the trial court's oral ruling and its written order are irrelevant").

In his reply brief, Husband goes further to argue that the trial court's April 14, 2022 order does not reflect the trial court's independent judgment. *See **Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 312 (Tenn. 2014) (finding that "a court's decisions must be, and must appear to be, the result of the exercise of the trial court's own judgment" (citation omitted)).[6] However, this aspect of Husband's argument was not raised in his initial appellate brief. And "[i]ssues raised for the first time in a reply brief are waived." **Hughes v. Tenn. Bd. of Prob. & Parole**, 514 S.W.3d 707, 724 (Tenn. 2017); *see also* **Reliant Bank v. Bush**, 631 S.W.3d 1, 6 n.4 (Tenn. Ct. App. 2021) ("A reply brief, however, is not a vehicle for raising new issues. As such, we will not consider them." (citing **Owens v. Owens**, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues."))), *perm. app. denied* (June 11, 2021). Additionally, Husband does not point to any specific inconsistencies between the trial court's oral ruling and the resulting order. Nor does he argue that the order fails to reflect the trial court's independent judgment. It is not this Court's duty to comb through the appellate record to find support for a party's assertions; as we have repeatedly stated, "[j]udges are not like pigs, hunting for truffles that may be buried in the record, or for that matter, in the parties' briefs on appeal." **Nunley v. Farrar**, No. M2020-00519-COA-R3-CV, 2021 WL 1811750, at \*6 (Tenn. Ct. App. May 6, 2021) (internal quotation marks and citation omitted) (declining to search the entire record for factual support for appellee's assertions where its appellate brief was deficient). We therefore conclude that Husband has waived this issue.

**D.**

Next, Husband raises as an issue that the trial court erred by denying his motion to alter or amend the April 14, 2022 order that itself denied Husband's earlier motion to alter or amend the trial court's November 3, 2020 order. As it relates to this issue, Husband's appellate brief states, in its entirety, as follows:

> On May 13, 2022 Husband filed a *Motion to Alter or Amend Judgment* pursuant to Tenn. R. Civ. P. 52.02 and 59.04 seeking an order to alter or amend the Trial Court's Order entered on April 14, 2022. The basis for the motion was that the Trial Court's Order contained findings of fact that were inconsistent with the Trial Court's oral ruling on March 29, 2022 and the Trial Court's *Memorandum and Order* entered November 3, 2020. Husband attached a transcript from the March 29, 2022 hearing (*see* Transcript from

---

[6] Indeed, Husband recites multiple paragraphs from the **Lakeside** opinion verbatim, without proper citation.

the March 29, 2022 hearing, Circuit Court Clerk index #25), a copy of the Trial Court's April 14, 2022 Order and *Husband's Proposed Final Order* filed with the Circuit Court Clerk on April 6, 2022. In response the Trial Court, *sua sponte* and without a hearing, entered an Order on May 26, 2022 which states:

> This Court has received Husband's motion to alter or amend the Court's order which was entered on April 14, 2022. The order of April 14, 2022 was an order which disposed of Husband's prior motions to alter or amend. The Rules of Civil Procedure do not provide for motions to reconsider. See Rule 59.01 Tenn. R. Civ. P. Moreover, Husband has filed a notice of appeal, and this Court has no further jurisdiction. Husband's second motion to alter or amend is DENIED.

Husband does not appropriately reference where in the record this alleged error and its effects can be found or provide any citation to legal authority demonstrating his right to relief. Accordingly, Husband's brief on this issue does not comply with appellate briefing requirements. *See* Tenn. Ct. App. R. 6(a) (requiring litigants to include citations to the record in their written arguments); Tenn. R. App. P. 27(a)(7) (requiring appellants to include "citations to the authorities and appropriate references to the record" in their arguments). Even to the extent that these technical failures could be overlooked, Husband's argument does little to explain how the trial court erred or how he was prejudiced. Respectfully, this is nothing more than a skeletal argument. *See **City of Memphis v. Edwards by & Through Edwards***, No. W2022-00087-COA-R3-CV, 2023 WL 2159244, at *5 (Tenn. Ct. App. Feb. 22, 2023) ("Tennessee courts have held that arguments that are unsupported by legal authority, rely only on quotes from non-controlling authority, or are based on a theory that is only vaguely explained, are skeletal." (footnotes omitted)), *vacated* (Tenn. July 5, 2023).[7] And it is well-settled that "a skeletal argument that is really nothing more than an assertion will not properly preserve a claim." ***Little v. City of Chattanooga***, 650 S.W.3d 326, 370 (Tenn. Ct. App. 2022) (quoting ***Chiozza v. Chiozza***, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) (internal quotation marks omitted)), *perm. app. denied* (June 14, 2022); *see also **Teal Props., Inc. v. Dog House Invs., LLC***, No. M2022-00128-COA-R3-CV, 2023 WL 2533492, at *2 (Tenn. Ct. App. Mar. 16, 2023) ("If a party fails to cite any authority or construct an argument supporting the issue, then the party waives the issue on appeal.").

Moreover, the focus of Husband's argument again appears to be the difference between the trial court's oral and written rulings, which we have previously explained is

---

[7] In ***Edwards***, a majority of the panel concluded that the appellant's argument was skeletal on this basis, but chose to nevertheless consider its argument on the basis of good cause. *Id.* at *5. The Tennessee Supreme Court did not disturb this Court's finding that the argument was skeletal, only that good cause existed to support consideration notwithstanding the argument's deficiencies.

an argument that lacks merit. *See **In re Britton H-S.***, 2018 WL 1040945, at *3 (finding that where the oral ruling is not incorporated into the written decree, "any inconsistencies between the trial court's oral ruling and its written order are irrelevant"). Husband is not entitled to relief on this issue.[8]

**E.**

Husband next argues that the trial court erred in preventing him from putting on proof related to inappropriate marital conduct by Wife unrelated to her admitted adultery. As with the previous issue, Husband offers no citation to legal authority.[9] Therefore, the issue is similarly waived. S*ee **Teal Props.***, 2023 WL 2533492, at *2 ("If a party fails to cite any authority or construct an argument supporting the issue, then the party waives the issue on appeal."). Moreover, even if we were to consider this argument, we conclude that Husband has failed to show how he was prejudiced by the trial court's ruling. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). Here, Wife admitted her adultery and Husband was granted an absolute divorce on that ground. The vast majority of this case involves the classification and division of marital property, an issue where fault is irrelevant. *See* Tenn. Code Ann. § 36-4-121(a)(1)(A). As such, Husband has failed to demonstrate any reversible error in the trial court's decision to limit evidence of fault. ***State v. Weeden***, 733 S.W.2d 124, 125 (Tenn. Crim. App. 1987) (holding that the exclusion of evidence was harmless where it was "cumulative in many respects and irrelevant in others").

**F.**

Husband's final argument is that the trial court erred by not enforcing paragraph six of the parties' antenuptial agreement—granting Husband's son from a previous marriage no less than one-fourth of the value of the parties' marital property—despite the trial court having found the agreement to be enforceable and having determined a value for the parties' marital property. Once again, however, Husband provides neither authority nor argument in relation to the trial court's ultimate conclusion that "[i]n this case, there could be no meeting of the minds since there was no marital property in existence at the time of the execution of the contract, and [the] only marital property described in the agreement was 'jointly titled' property."

---

[8] In his reply brief, Husband again attempts to raise for the first time the issue of whether the trial court's order reflects its own independent judgment. We will not consider this argument. *See **Hughes***, 514 S.W.3d at 724 ("Issues raised for the first time in a reply brief are waived.").

[9] In his reply brief, Husband attempts to raise for the first time the issue of whether the trial court's conduct violated Rule 2.6 of the Tennessee Code of Judicial Conduct by interfering with his right to be heard. We will not consider this argument. *See **Hughes***, 514 S.W.3d at 724 ("Issues raised for the first time in a reply brief are waived.").

First, Husband provides a singular in-text citation, for the notion that "Tennessee's public policy favors prenuptial agreements."[10] (Citing **Perkinson v. Perkinson**, 802 S.W.2d 600, 601 (Tenn. 1990)). As the trial court found the antenuptial agreement between the parties to be generally valid, with only paragraph six being deemed unenforceable, this idea, while certainly true, is not particularly relevant to our efforts on appeal. Husband then spends considerable time discussing the trial court's statements in open court, which are also not relevant on appeal. **In re Britton H-S.**, 2018 WL 1040945, at *3. Husband also erroneously claims that Wife failed to raise the issue of paragraph six's enforceability until after trial.[11]

The remainder of Husband's argument on this issue is as follows:

The parties entered into the agreement, freely and voluntarily, and subsequently accumulated assets which the Trial Court has classified as "marital assets" or the "marital estate". It is clear from the Ante Nuptial Agreement that [K.J.] is an intended third-party beneficiary of the Ante Nuptial Agreement. The Court was presented with caselaw which stands for the proposition that a minor child can be a third-party beneficiary of an antenuptial agreement (*See* **Stichter v. Zuidema**, 2[6]9 Ill. App. 3d 455 (1995)). As a corporate attorney who has drafted agreements for more than 20 years, Wife has first-hand knowledge and is both professionally and acutely cognizant that contractual terms have meaning and that paragraph 6 to the Antenuptial Agreement contemplated that the union of Husband and Wife would result in the couple acquiring marital assets. It is Husband's position that [K.J.] is clearly and unambiguously an intended third-party beneficiary of the Ante Nuptial Agreement and should receive 25% of the Trial Court's determined value of the marital property/estate ($2,263,561.00) which equates to $565,890. A party to a contract is not relieved of their obligation to perform just because they subsequently come to believe that the contract terms are not to their liking.

(Citation to the record omitted).

---

[10] The terms "antenuptial" and "prenuptial" are used interchangeably to refer to agreements made prior to and in contemplation of marriage, which are indeed favored in Tennessee. *See* **Ellis v. Ellis**, No. E2013-02408-COA-R9CV, 2014 WL 6662466, at *4 (Tenn. Ct. App. Nov. 25, 2014) ("Prenuptial agreements, sometimes called antenuptial or premarital agreements, are favored by Tennessee law.")

[11] Wife first stated her position that paragraph six is unenforceable in her response to Husband's motion for partial summary judgment, filed in June 2020. At trial, Wife also testified to her understanding that paragraph six could not be enforced because it only applied to marital property, which she argued only included jointly titled property, citing other provisions of the antenuptial agreement. It appears that this argument may have been the genesis of the trial court's finding that there was no meeting of the minds as to what property paragraph six included.

Thus, even the portion of Husband's brief most responsive to the trial court's decision primarily focuses not on whether there was a meeting of the minds, but on whether K.J. was an intended third-party beneficiary of the parties' antenuptial agreement.[12] Moreover, the single case cited by Husband relative to this aspect of his argument does not provide the support that he asserts that it does. Husband indicates that the trial court was presented with an out-of-state appellate opinion, which he claims "stands for the proposition that a minor child can be a third-party beneficiary of an antenuptial agreement." In the cited case, however, the Illinois Court of Appeals actually ruled that the plaintiffs, who were the adult children of the parties to an antenuptial agreement, were not third-party beneficiaries of the agreement. *Sticher v. Zuidema*, 269 Ill. App. 3d. 455, 463, 646 N.E.2d 296, 302 (1995). The cases discussed by the court as finding children to be third-party beneficiaries of an agreement between their parents did not involve antenuptial agreements and were found to be "readily distinguishable." *Id.* (citing *Miller v. Miller*, 516 N.E.2d 837 (Ill. App. Ct. 1987) (finding son to be the beneficiary of father's promise to pay son's college expenses in a property settlement agreement with mother); *Joslyn v. Joslyn*, 54 N.E.2d 475 (Ill. 1944) (finding children to be the beneficiaries of agreement where father agreed to pay a debt in exchange for mother's promise to will the marital home to the children)). Moreover, each of these cases involved the question of whether the children of a party to a contract may maintain an action on a contract entered into by a parent. K.J. was never made a party to this case, and no claim was ever filed by him or specifically on his behalf. Thus, *Sticher* is decidedly unrelated to our review of the trial court's order.

In sum, Husband includes only a few sentences in his brief that could arguably be understood as addressing the trial court's determination that there was no meeting of the minds between the parties regarding marital property. Husband certainly does not include any legal authority relevant to the meeting of the minds issue.[13] A party's failure to include in its brief a "properly supported argument responsive to the trial court's dispositive ruling" generally results in a waiver on appeal. *Augustin v. Bradley Cnty. Sheriff's Off.*, 598 S.W.3d 220, 226–27 (Tenn. Ct. App. 2019) (citing *Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000)); *see also McNeill v. Blount Mem'l Hosp. Inc.*, No. E2022-00209-COA-R3-CV, 2022 WL 16955177, at *7 (Tenn. Ct. App. Nov. 16, 2022) (finding appellant to have waived an issue where his brief "contain[ed] no argument that addresse[d] the actual basis for the trial court's grant of summary judgment"). Husband is not entitled to relief on this issue.

---

[12] The third-party beneficiary concept is generally intended as a means by which a non-party to a contract gains the right to enforce the contract. *See generally Owner-Operator Indep. Drivers Ass'n, v. Concord EFS, Inc.*, 59 S.W.3d 63, 68–69 (Tenn. 2001). Here, both Husband and Wife are parties to the antenuptial agreement.

[13] In his reply brief, Husband includes additional legal citation regarding whether a contract was intended to benefit a third-party and general rules of contract construction. This authority is not responsive to the trial court's ruling.

Finally, we address Wife's request to be awarded her attorney's fees on appeal. First, Wife argues that she is entitled to her appellate attorney's fees pursuant to Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"An appeal is frivolous when it 'has no reasonable chance of success' or is 'so utterly devoid of merit as to justify the imposition of a penalty.'" *Stokes v. Stokes*, No. M2018-00174-COA-R3-CV, 2019 WL 1077263, at *10 (Tenn. Ct. App. Mar. 7, 2019) (quoting *Chiozza*, 315 S.W.3d at 493). In that vein, a "a party's failure to point to any evidence or rule of law entitling him or her to relief may be a basis for a court to conclude an appeal is frivolous." *Id.* (citing *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999)). An award of appellate attorney's fees is within this Court's sole discretion, though the statute is meant to be applied sparingly "to avoid discouraging legitimate appeals." *Id.* (citing *Chiozza*, 315 S.W.3d at 493).

Alternatively, Wife asserts that she should at least receive her attorney's fees associated with Husband's petition for criminal contempt. Wife relies on section 36-5-103(c), which states that:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action . . . both upon the original divorce hearing and at any subsequent hearing.

We acknowledge that Husband's failure to properly brief his arguments resulted in the waiver of many of his issues upon appeal. We also acknowledge that Husband's appeal of the dismissal of his petition for criminal contempt was constitutionally barred. *Marlow*, 563 S.W.3d at 882. Therefore, the equities of this case are such that we exercise our discretion to award Wife her attorney's fees on appeal.

## V. CONCLUSION

The judgment of the Circuit Court for Davidson County is affirmed, and this cause is remanded for further proceedings consistent with this Opinion, including a determination by the trial court of the amount of appellate attorney's fees to be awarded to Appellee. Costs of this appeal are taxed to Appellant, Kelvin D. Jones, for which execution may issue,

if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE